363 So.2d 344 (1978)
FLAGLER CENTER BUILDING LOAN CORP., a Florida Corporation, Appellant,
v.
CHEMICAL REALTY CORPORATION, a New York Corporation, et al., Appellee.
Nos. 77-1659, 77-1825 and 77-1826.
District Court of Appeal of Florida, Third District.
June 13, 1978.
Rehearing Denied November 3, 1978.
*345 Sibley, Giblin, Levenson & Glaser, Miami Beach, Joseph Pardo, Miami, for appellant.
Gunster, Yoakley, Criser, Stewart & Hersey and Leigh E. Dunston, Palm Beach, Leland E. Stansell, Jr., Miami, for appellee.
Before HAVERFIELD, C.J., and PEARSON and HENDRY, JJ.
PER CURIAM.
These appeals are from a final judgment foreclosing a construction loan mortgage and from two post-judgment orders. The principal issue presented on the appeal from the final judgment is whether the trial court properly found the mortgage in default. On the interlocutory appeals, the question is whether the trial court had jurisdiction to enter the orders after an appeal had been taken from the Final Judgment. Defendant Flagler Center Building Loan Corp. was the borrower and is the appellant here. Plaintiff Chemical Realty Corporation was the lender and is appellee here. Chemical Realty has filed cross-assignments contending that the amount of the debt found due and owing is less than the true amount and that a finding of waiver of the default for failure to meet the completion date for the building is not supported by the record. Other points presented on the appeal and by the cross-assignments must also be decided.
A construction loan and mortgage was entered into between the parties. In December, 1972, Chemical Realty agreed to provide cash for construction up to $6,000,000.00 to build the Flagler Center Building in downtown Miami. At the time the loan was made, Flagler Center had secured a commitment for long term, permanent financing from Barnett Winston Investment Trust for $6,000,000.00.
By the terms of the construction loan mortgage, the completion date was set for November 30, 1974,[[1]] and default would occur should this date not be met. The commitment for the long term mortgage required a completion date of December 31, 1974.[[2]] The building was not completed by November 30, 1974. Chemical Realty continued to make advancements of funds under the construction loan agreement during December of 1974. The building was not completed by December 31, 1974. On February 25, 1975, Chemical Realty funded a draw against the $6,000,000.00 construction loan fund. This last funding brought the total amount drawn by Flagler Center to $4,909,909.07. There was, therefore, a difference of $1,090,090.93 between the maximum amount agreed to be advanced for construction and the amount actually advanced by Chemical Realty.
Chemical Realty filed its complaint for foreclosure on May 6, 1975, and claimed defaults of the mortgage and note as follows: (a) that the principal balance together with interest was due by the terms thereof; (b) that Flagler Center had failed to complete the building on or before the November 30, 1974, completion date; (c) that Flagler Center had failed to keep the commitment of the long term lender in full *346 force and effect as covenanted in the building loan agreement.
Thereafter, in July of 1975, the trial court appointed William L. Pallot as receiver for Flagler Center. After three days of trial, the court found that the bank had waived the default.[[3]] Nevertheless, the trial court found that the mortgage should be foreclosed and proceeded to "balance the equities" by providing for a remission of interest in the loan from February 25, 1975, to the date of the sale, postponement of the foreclosure sale for ninety days and, finally, made a provision for the further extension of the redemption period if Flagler Center could make definite arrangements for refinancing.[[4]]
Flagler Center filed its notice of appeal from the final judgment of foreclosure on July 27, 1977. On August 2, 1977, the trial court entered an amended final judgment of foreclosure. The following changes were made: (1) the foreclosure sale date was reset to September 22, 1977; (2) an award of $184,926.69 to the receiver and his attorneys as fees and costs was specified; (3) co-conservators for the property were appointed; (4) a special master for the determination of mechanic's and materialmen's liens was appointed; and (5) the sum of $225,000 for receiver's certificates and interest on these certificates was added to the mortgage debt and held to be necessary in order to protect the building. On August 5, 1977, the trial court entered a supplemental order "reflecting additional debt and new sale date" which specifically provided for the adding of the $225,000 for receiver's certificates to the mortgage debt. On August 22nd, Flagler Center filed a notice of appeal from the amended final judgment. *347 On August 22nd, the defendant also filed its notices of interlocutory appeal from the last mentioned supplemental order. The appeals were consolidated for all appellate purposes.
The initial question presented by Flagler Center is whether a trial court can find a waiver of default and, at the same time, foreclose the mortgage as though there were a default. Chemical Realty responds in two ways. First, it urges that the finding of waiver applied only to the claimed default for failure to complete the building by November 30, 1974. Secondly, it urges that the evidence does not support the trial court's finding of a waiver of default in the mortgage. A waiver of a default requires action by the mortgagee which misleads the mortgagor so that the mortgagor acts in a way that he would not have acted if he had known that the mortgagee would require performance under the strict terms of the mortgage agreement. See Kreiss Potassium Phosphate Co. v. Knight, 98 Fla. 1004, 124 So. 751 (1929); New England Mutual Life Insurance Company v. Luxury Home Builders, Inc., 311 So.2d 160 (Fla. 3d DCA 1975); and Harrell v. Lombard, 122 So.2d 625 (Fla. 2d DCA 1960).
The trial judge's finding of fact that there was an estoppel by waiver of the default in the mortgage is a finding of fact which arrives in this court with a presumption of its correctness. Further, for this court to reverse such a finding of fact, there must be a lack of substantial evidence to support the finding. See Chakford v. Strum, 87 So.2d 419 (Fla. 1956); Manchester Insurance & Indemnity Co. v. Novack, 284 So.2d 433 (Fla. 3d DCA 1973). This record reviewed in that light supports the finding of the trial judge in that it shows that in reliance upon the representations of Chemical Realty, the defendant, Flagler Center, critically changed its position by giving up the right and opportunity to complete the building by the deadline. From mid-October to mid-November when Chemical Realty knew that the building was not going to be completed on the due date and the permanent commitment was lost, Chemical Realty paid to the defendant $560,732.54, a sum that would reasonably lead the defendant to believe that the loan was continued in full force and effect.
The position of Chemical Realty that the waiver was void because there was no consideration for it, is not in accord with Florida law. In Gilman v. Butzloff, 155 Fla. 888, 22 So.2d 263 (1945), the Supreme Court of Florida found that a waiver without consideration was valid when based upon conduct and when acted upon by the defendant. Cf. New England Mutual Life Insurance Company v. Luxury Home Builders, Inc., 311 So.2d 160 (Fla. 3d DCA 1975).
We hold, therefore, that the court's finding of waiver of default in the mortgage is supported by the evidence and must be affirmed. With regard to the position of Chemical Realty that the waiver concerned only a single default in the completion date, we find nothing in the record to support this position. The waiver concerned the clear right to foreclose at that time, and the evidence supports Flagler Center's position that after having waived default, Chemical Realty sought to foreclose simply because it was unable to secure a modification of the terms of the loan.
Although not made a point on appeal, Flagler Center, as appellant, has urged that the trial judge should have required the mortgagee, Chemical Realty, to pay to the defendant an amount of money equaling the difference between the actual amount advanced and the maximum amount the lender agreed to advance for construction purposes. We find no basis in this record for such a contention inasmuch as the mortgage does not require the payment of the full $6,000,000.00 unless and except it is used in the construction of the building and the formal requirements of the funding of the draw for construction purposes are complied with. The fact that Flagler Center was able to construct the building for an amount of money less than it was estimated by the parties would be required, does not obligate the lender on a *348 construction mortgage to advance monies not required for construction purposes.[[5]]
Flagler Center's second point on appeal urges that it was error for the trial judge to add the commissioner's fees and costs and the commissioner's attorney's fees and costs to the amount required from the defendant to redeem the property, because the record contains a proper stipulation that the plaintiff would pay all costs of a commissioner. Upon the subject of the commissioner's fees and costs, the trial judge made extensive provisions[[6]] but nowhere in the judgment does he refer to a stipulation concerning commissioner's costs. The question of whether the plaintiff had stipulated to pay the costs of the commissioner was presented to the trial judge by defendant's Motion to Modify Order Appointing Court Commissioner and to Require Plaintiff to Post Bond for Payment of Cost, Fees, and Expenses of Court Commissioner and Court Commissioner's Attorneys. After several hearings, the result of the motion was an Order Reserving Judgment on Motion to Clarify. No further ruling appears thereon until the final judgment, above quoted in part, wherein the court held that the commissioner's costs and fees were chargeable against the property and added to the amount defendant must pay to redeem the property. We must conclude, therefore, that the court found, as a matter of fact, that there was no binding stipulation by the plaintiff to pay the fees and costs of the commissioner. We must then examine the record to determine whether the court's finding is supported in the record. Cf. Darling v. Rose, 301 So.2d 19 (Fla. 2d DCA 1974).
The hearing on the plaintiff's application for a receiver was long, and included the testimony of experts, numerous comments of counsel and argument. The defendant relies on the comments of plaintiff's counsel as an offer or stipulation by the plaintiff to pay the costs of a receivership should the plaintiff get the court to agree to appoint a receiver.[[7]]
*349 The plaintiff did prevail and the costs have been added to the amount the defendant must pay to acquire the building. Perhaps we would have a closer question if the defendant had prevailed and the mortgage was not foreclosed. Here the language used by the attorneys in argument is not definite. If this was a proposal to the court or to the defendant in order to get a receiver, then there is no evidence that it was accepted by the court or the defendant. We think that the language of Fla.R.Civ.P. 1.030(d)[[8]] contemplates something more definite than that which appears in this record as argument of counsel. For although under this rule, "... parol agreements may be made before the court if promptly made a part of the record or incorporated in the stenographic notes of the proceedings ...," the record in this cause does not show an "agreement" sufficient to meet the requirements of a stipulation.
The Final Judgment provides that "... the costs of the commissionership incurred, including the Commissioner's fees and costs and the Commissioner's attorneys' fees and costs and the Certificates of Indebtedness ... shall be treated as liens against the property ..." The judgment also provides that the "... Commissioner's fees and costs and the Commissioner's attorneys' fees and costs shall be added to the total amount required from the Defendant, FLAGLER CENTER BUILDING LOAN CORP., to redeem the property." The certificates of indebtedness covering the cost of the receivership, in addition to the receiver's fees and his attorneys' fees and costs, amounting in the original judgment to $1,275,260.58, and in the Amended Final Judgment to $1,507,157.44, were added to the mortgage debt required to be paid by the defendant in order to redeem. In addition, the Final Judgment and the Amended Final Judgment conditioned the right to redeem on the payment or the posting of security for the payment of all outstanding mechanics' liens and their attorneys' fees.
Receivers costs, in the absence of counter-prevailing equities, see Perry v. Beckerman, 97 So.2d 860 (Fla. 1957), are proper as a charge against the mortgaged property and are a part of the expenses of foreclosure which are included in a final judgment and must be paid in order to redeem the mortgaged property. See the general rule in Deauville Corporation v. Blount, 160 Fla. 286, 34 So.2d 537 (1948), with regard to the large discretion vested in the trial court in such matters.
*350 The third point presented by Flagler Center urges that the final judgment improperly added amounts to the mortgage debt in adjudging the amount required for the defendant to redeem the property. The amounts objected to are:
1. The Final Judgment provides that "... the costs of the commissionership incurred, including the Commissioner's fees and costs and the Commissioner's attorneys' fees and the Certificates of Indebtedness ... shall be treated as liens against the property ..." and that "... the Commissioner's fees and costs and the Commissioner's attorneys' fees and costs shall be added to the total amount required from the Defendant, FLAGLER CENTER BUILDING LOAN CORP., to redeem the property."
2. The certificates of indebtedness covering the cost of the receivership, in addition to the receiver's fees and his attorneys' fees and costs amounting in the original judgment to $1,275,260.58, and in the Amended Final Judgment to $1,507,157.44 were added to the mortgage debt required to be paid by the defendant in order to redeem.
3. In the Final Judgment and the Amended Final Judgment, the court conditioned the right to redeem on the payment or the posting of security for the payment of all outstanding mechanics' liens and their attorneys' fees.
We have already dealt with the fact that it is ordinarily proper to include receivers fees and costs in the amount required to redeem mortgaged property. Nothing argued under this point shows error in such a holding.
That portion of the Final Judgment which conditioned the right to redeem upon the payment of mechanics liens was erroneous. See Blue Heron Land Co. v. Brown, 98 Fla. 1238, 125 So. 369 (1930).[[9]] The plaintiff argues that, if error, the ruling was harmless because a special master appointed to settle the lien claims found no valid liens outstanding; this, however, does not appear from the record. Therefore, we hold the provision of the Final Judgment which provided that lien claims must be paid by the defendant in order to redeem should be stricken from the Final Judgment.
The last point presented pertains to the post-judgment orders. The defendant argues that the trial court was without jurisdiction to adjudicate conservators fees and attorneys fees after final judgment. We hold that the trial court was not divested of jurisdiction by the notice of appeal to adjudicate those matters necessary for the conservation of the property or to amend the Final Judgment on matters not going to the validity and correctness of the Final Judgment on appeal. See Brown v. Marion Mortgage Co., 107 Fla. 727, 145 So. 413 (1932); and Yarborough v. Kilbee, 307 So.2d 223 (Fla. 4th DCA 1975).
The points presented by Chemical Realty in its cross-assignments of error are mainly defensive and have been considered above. The assignments otherwise do not present reversible error.
Having found the trial court in error upon its failure to carry into effect the waiver of default which it found upon the evidence, we conclude that the judgment must be reversed. We have considered the issues presented on the cross-appeal and the additional points presented by appellant for the expedition of the settlement of the controversy between the parties. Thereupon, the judgment is reversed and the cause remanded for dismissal of the action in accordance with the views herein expressed.
Reversed and remanded with directions.
NOTES
[1] Events of Default. If one or more of the following events (an Event of Default) shall occur and be continuing
* * * * * *
"(d) The Improvement is not completed in accordance with the Plans and Specifications in the judgment of the Supervising Engineer on or before the Completion Date (as defined in Exhibit B);"
Exhibit B states:
"As used in this Agreement, the following terms shall have the following meanings:
"1. Completion Date  November 30, 1974."
[2] is understood that the buildings must be fully completed according to plans and specifications to be submitted to and approved by the Trust in writing, and disbursement made prior to December 31, 1974, otherwise, this commitment may be cancelled at the option of the trust without notice to the applicant and without liability of any kind upon the Trust."
[3] * * * * *
"Pursuant to the disputed and unresolved understanding between them at the October 1974 meeting and subsequent communications and conduct, and in the face of the knowledge that BWIT would not agree to extend the date of its permanent mortgage commitment, the Defendant, FLAGLER CENTER BUILDING LOAN CORP., continued to work toward completion of the building without delay, in good faith, and the Plaintiff continued to fund the job beyond the deadline set in the Building Loan Agreement in good faith, and acknowledged that `it was in the best interest of the parties' to complete the building. Neither the Plaintiff nor the Defendant, FLAGLER CENTER BUILDING LOAN CORP., had any knowledge or forewarning of the inability of BWIT to fund the permanent mortgage commitment if called upon to do so, or of the impending decline in market conditions, making it virtually impossible for Defendant, FLAGLER CENTER BUILDING LOAN CORP., to obtain permanent mortgage financing elsewhere.
"Without regard to the conduct of the principals of the Defendant corporation, which might not be considered laudatory or commendable; and although Plaintiff's conduct in funding the job beyond November 30, 1974, was done with noble, commendable motives, it nevertheless constituted a waiver.
"Plaintiff is entitled to be repaid but its refusal to fund the job until completion and the subsequent filing of this action prior to completion of the building was premature and unwarranted in light of the waiver, and to that extent the equities are with the Defendant."
* * * * * *
[4] no evil motives were intended by either of the principal parties litigant, justice and fairness and a `balancing of the equities' dictate that the Plaintiff's complaint and the Defendant, FLAGLER CENTER BUILDING LOAN CORP.'s Affirmative Defenses and Counterclaim be adjudicated as follows:
"It is ORDERED, ADJUDGED AND DECREED:
"1. That the Plaintiff shall not be permitted to collect any interest on its loan past February 25, 1975  the date of the last installment paid by the Plaintiff on the funding of the construction job under the Building Loan Agreement. The last installment so paid did not exhaust the funds which Chemical was obligated to advance under said Building Loan Agreement.
"2. That the Plaintiff shall not be permitted to have the property sold at judicial foreclosure sale prior to ninety (90) days (July 29, 1977) from the date of entry of this Final Judgment of Foreclosure.
"3. That if the Defendant, FLAGLER CENTER BUILDING LOAN CORP., has made definite arrangements for refinancing but cannot redeem the property within ninety (90) days (July 29, 1977), the Court will consider an application for an extension of the redemption period for a maximum of thirty (30) days (August 28, 1977), provided such application for extension be made no later than twenty (20) days (July 9, 1977) prior to the termination of the above described ninety (90) day period (July 29, 1977)."
[5] The mortgage herein states:

"NOW, THEREFORE, in consideration of the sum of Six million and 00/100 Dollars ($6,000,000.00) and other valuable consideration paid by the Lender to the Borrower, or as much thereof as may from time to time be advanced by the Lender to the Borrower, the Borrower, to better secure the payment of the principal sum set out in the Note, and interest thereon and premium, if any, has executed and delivered this Mortgage . ." [emphasis added]
[6] That the costs of the commissionership incurred, including the Commissioner's fees and costs and the Commissioner's attorneys' fees and costs and the Certificates of Indebtedness issued to conserve and/or improve the property, shall be treated as liens against the property prior in dignity to the Plaintiff's mortgage and all other lien claims. That is to say, the commissionership costs, including Commissioner's fees and costs and the Commissioner's attorneys' fees and costs and the Certificates of Indebtedness shall be paid first by whomsoever recovers or acquires the property, either through redemption or as a result of the successful bid at judicial foreclosure sale.
"5. That the amount of any remaining fees and costs due the Commissioner and the Commissioner's attorneys' fees and costs shall be set by another judge of this Court pursuant to a stipulation of the parties and a previous Order of this Court based thereon. Said fees and costs should be determined as soon as possible and no later than July 1, 1977.
"6. That the Commissioner's fees and costs and the Commissioner's attorneys' fees and costs shall be added to the total amount required from the Defendant, FLAGLER CENTER BUILDING LOAN CORP., to redeem the property.
"7. That the Plaintiff has requested the Commissioner to remain in office until June 30, 1977, and has agreed to bear the expense of the Commissioner's fees and costs and the Commissioner's attorneys' fees and costs from the date of entry of this Final Judgment Of Foreclosure until June 30, 1977. Therefore the commissionership shall be dissolved on July 1, 1977, and thereafter the building manager, Roger Stake, shall operate and manage the building under Court supervision pending the sale or redemption of the property and shall furnish an appropriate bond to be set by the Court."
[7] SIBLEY: It is going to cost them money. Let's save the bank money.
"THE COURT: What I am concerned with is the cost of the receivership, if he can be appointed and agreed upon, because they don't work cheap.
"MR. DUNSTON: Right, Judge. It's our costs; we're willing to bear the burden of that on this personally. It's all our money.
"THE COURT: What is going to happen if they prevail? Who is going to pay those costs?
"MR. PARDO: There is going to be a cost of the foreclosure proceedings or what, I don't know. Where will that fall? Go ahead. Excuse me.
"MR. DUNSTON: You are suggesting that if they prevail in the foreclosure proceeding 
"THE COURT: Sure. Suppose that they prevail?
"MR. PARDO: Then a substantial bond should be posted and the attorney for the receiver  the receiver appointed.
"MR. DUNSTON: There is no question that a receiver is an expensive proposition."
* * * * * *
"MR. DUNSTON: If I might go on, however, Mr. Silverman has authorized me to say on behalf of the Plaintiff, because it is our money and we do believe that we will prevail in this matter, that we will bear the cost of the receivership if we don't prevail, and we will stipulate as to that, and in that light we would ask the Court then to please consider appointing a receiver that can move forward with the project as fast as possible, get the completed C.O.'d and rented up."
* * * * * *
"I want the Court to keep in mind that Chemical Realty has upon itself the burden of saying, `We believe that we will prevail and that the building will become ours; in that event we will bear the expense of the receivership, but we do not want Mr. Revitz to be the receiver.'
"THE COURT: All right, sir."
[8] Stipulations. No private agreement or consent between parties or their attorneys shall be of any force unless the evidence thereof is in writing, subscribed by the party or his attorney against whom it is alleged; provided that parol agreements may be made before the court if promptly made a part of the record or incorporated in the stenographic notes of the proceedings and agreements made at depositions which are incorporated in the transcript thereof need not be signed when signing thereof is waived."
[9] defendant in a mortgage foreclosure proceeding should not be required to pay any amount in excess of what complainant is entitled to recover, together with all costs of such proceeding, before being permitted to save his property from foreclosure sale."
* * * * * *
"It is ordered that the final decree, in so far as it ordered defendants to pay taxes, not advanced or paid out by complainants, before being permitted to redeem ... be and it is hereby reversed."