361 So.2d 156 (1978)
RINKER MATERIALS CORP. et al., Petitioners,
v.
The PALMER FIRST NATIONAL BANK AND TRUST COMPANY OF SARASOTA, Etc., Respondent.
No. 52472.
Supreme Court of Florida.
July 20, 1978.
*157 Henry J. Whelchel of Steel, Hector & Davis, Miami, for petitioners.
Daryl J. Brown of Rosin, Abel, Band, Rosin & Brown, Sarasota, for respondent.
HATCHETT, Justice.
In this case, we must decide whether or not a party may be granted relief under the theory of equitable estoppel without proof of fraud or misrepresentation on the part of the party against whom estoppel is sought. The Third District Court of Appeal answered this question in the negative, Palmer First National Bank v. Rinker Materials Corp., 348 So.2d 1234 (Fla. 3d DCA 1977), creating direct conflict with Gulf Shore Dredging Co. v. Ingram, 193 So.2d 232 (Fla. 4th DCA 1966). Jurisdiction vests pursuant to Article V, Section 3(b)(3), Florida Constitution. The decision of the Third District Court is approved.
Petitioners are subcontractors who furnished labor and materials to a construction project owned by FINCO, and respondent is the mortgagee of the construction loan. At one time or another, respondent assured all petitioners that there were sufficient funds in the loan account to complete the project; that they should continue to furnish labor and materials; that there was no need to file mechanics' liens; and that the bank would do everything it could to see that the subcontractors were paid, including the issuance of joint checks to the contractor and subcontractors if necessary. In reliance on the bank's statements, petitioners continued to furnish labor and materials. When petitioners were not paid, they filed liens and instituted foreclosure. In response, First National asserted the priority of its recorded mortgage.
Finding that petitioners had relied on the bank's statements and were induced to continue furnishing labor and materials, the trial court held that respondent was equitably estopped from asserting the priority of its mortgage over petitioners' liens. The district court reversed, reasoning that since the bank made no statements which were fraudulent, untrue, or misrepresentative, the bank could not be held to have waived its priority. We agree.
In 28 Am.Jur.2d, Estoppel and Waiver, Section 35, equitable estoppel is defined as follows:
Broadly speaking, the essential elements of an equitable estoppel or estoppel in pais, as related to the party to be estopped, are: (1) conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct shall be acted upon by, or influence, the other party or other persons; and (3) knowledge, actual or constructive, of the real facts. And, broadly speaking, as related to the party claiming the estoppel, the essential elements are (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance, in good faith, upon the conduct or statements of the party to be estopped; and (3) action or inaction based thereon of such a character as to change the position or status of the party claiming the estoppel, to his injury, detriment, or prejudice. (footnotes omitted)
Relying on Gulf Shore Dredging Co. v. Ingram, supra, petitioners argue that the doctrine of equitable estoppel is based on general considerations of right and justice as they apply to the relationship of the parties and the circumstances surrounding their dealings in a particular case, and does not require proof of fraud and misrepresentation. In Gulf Shore, the Second District Court of Appeal stated:
Equitable liens necessarily involve the doctrine of estoppel; however, they are based chiefly upon the fundamental maxim of equity that no one shall be unjustly *158 enriched at the expense of another. Phelps v. T.O. Mahaffey, Inc., Fla.App. 1963, 156 So.2d 900. Consequently, while affirmative misrepresentation or other wrongdoing may supply additional ground or reason for imposing an equitable lien or charge, a showing of wrongdoing is not an essential prerequisite to such relief. Oates v. Prudential Insurance Co. of America, 1932, 107 Fla. 224, 144 So. 418. At 234. (footnotes omitted)
Petitioner also cites the following language from North v. Culmer, 193 So.2d 701 (Fla. 4th DCA 1967):
... actual fraud in the technical sense, bad faith, or an intent to mislead or deceive is not essential to create such an estoppel.
It is enough if the conduct claimed as a basis for the estoppel is done with actual or virtual intent that the other party should act upon it. At 704.
The overwhelming weight of authority in Florida, however, is contra. In Merritt v. Unkefer, 223 So.2d 723 (Fla. 1969), this court clearly stated:
Our study of the cases indicates that the award of an equitable lien based on unjust enrichment or "general consideration of right and justice" has in each instance been predicated on factors such as mistake or material misrepresentation beyond the circumstances described by the complaint in the present case. At 724. (footnotes omitted) (emphasis added)
In Jennings v. Connecticut General Life Insurance Co., 177 So.2d 66, 68 (Fla. 2nd DCA 1965), the Second District Court held that "there must be circumstances such as fraud or misrepresentation of essential facts upon which the lender or contractor relied in good faith... ."
In Gancedo Lumber Co., Inc. v. Flagship First National Bank of Miami Beach, 340 So.2d 486, 487 (Fla. 3d DCA 1976), it was held that there must be "some material misrepresentation, fraud, mistake or some factual circumstance tending to show that the bank (the lender) exercised `affirmative deception' on the subcontractor in order to keep it on the job."
In J.G. Plumbing Service, Inc. v. Coastal Mortgage Co., 329 So.2d 393 (Fla. 2nd DCA 1976), the Second District Court held:
... we readily agree that a construction lender should not be permitted to affirmatively mislead subcontractors and materialmen so as to induce them to continue to work upon and supply materials to the job to their detriment. A construction lender who falsely advises a materialman or subcontractor that the mortgage is not in default must suffer the consequences if further work and materials are incorporated into the project in reliance thereon. Such action would be equivalent to the fraud and misrepresentation which the courts have traditionally sought to remedy where possible through the imposition of an equitable lien. At 396. (Emphasis added)
This principle was most recently discussed in Indiana Mortgage and Realty Investors v. Peacock Construction Co., 348 So.2d 59 (Fla. 2nd DCA 1977). In that case, Peacock, a plumbing contractor, furnished materials and services to a construction project of which Indiana Mortgage and Realty Investors was the mortgagee of the construction loan. Indiana instituted foreclosure, and Peacock sought to establish an equitable lien superior to Indiana's mortgage. Peacock's lien was predicated upon a telephone conversation between its president and Indiana's loan disbursement representative, wherein Peacock's president was told that there were sufficient funds in the construction loan account to cover Peacock's services. In fact, there were not sufficient funds. The Second District Court held that without proof of "affirmative deception, equivalent to fraud and misrepresentation," Indiana would not be estopped from asserting the priority of its mortgage.
In the words of J.G. Plumbing Service, Inc. the only duty flowing from the mortgagee in this posture was not to "affirmatively deceive" the contractor to his detriment. The mistaken observation that there seemed to be enough money left in undisbursed loan funds to complete the project falls short of what we contemplated *159 as "affirmative deception" equivalent to fraud and misrepresentation which would justify the imposition of an equitable lien. At 60. (emphasis added)
The trial court in this case found that the bank's statements were neither fraudulent nor untrue. Therefore, the Third District Court of Appeal correctly reversed the trial court's order granting equitable relief to the petitioners. We hold that a party may successfully maintain a suit under the theory of equitable estoppel only where there is proof of fraud, misrepresentation, or other affirmative deception. To hold otherwise would inject an unnecessary amount of uncertainty into the construction loan industry.
To the extent that Gulf Shore and North v. Culmer, supra, held otherwise, those decisions are overruled.[*]
Accordingly, the decision of the Third District Court of Appeal is approved.
It is so ordered.
ENGLAND, C.J., and ADKINS, BOYD, OVERTON, SUNDBERG and ALDERMAN, JJ., concur.
NOTES
[*] Other cases cited by petitioner are distinguishable. In Hall's Miscellaneous Ironworks, Inc. v. All Southern Inv. Co., 283 So.2d 372 (Fla. 1st DCA 1973), the owner/mortgagor induced a subcontractor to refrain from filing a mechanics lien until further financing for the construction project was obtained. The owner then executed a mortgage on the property (to a corporation in which he held stock) for the purpose of defrauding the subcontractor of the benefit of his materials and labor. The court there held that the subcontractor was not entitled to an equitable lien superior to the mortgagee's interests, because the evidence was insufficient to charge the bank with having participated in the fraud perpetrated by the owner, or, with having committed any other acts which would subordinate the mortgage. In Architectonics, Inc. v. Salem-American Ventures, 350 So.2d 581 (Fla. 2nd DCA 1977), the owner induced the subcontractor to delay filing his mechanics lien and falsely promised to guarantee payment and subject the property to any claim or lien later filed. When the job was completed, the owner refused to pay. The subcontractor then sought an equitable lien, attempting to establish priority over the construction lender's mortgage. The court denied relief specifically finding that there was no course of dealings between the lender and the subcontractor which would entitle the subcontractor to such a lien. In Blanchard v. Continental Mortgage Investors, 217 So.2d 586 (Fla. 1st DCA 1969), the subcontractor and mortgagee were in privity. In fact, the mortgagee expressly (and impliedly) contracted with the subcontractor to pay. In the present case, petitioners were not in privity with the mortgagee and there was no agreement to pay or to underwrite the contractor's obligation under the construction loan.