463 So.2d 432 (1985)
Eli PLOTCH and Philip Berkley, Appellants,
v.
August GREGORY, Jr., et al., Appellees.
No. 82-2107.
District Court of Appeal of Florida, Fourth District.
February 6, 1985.
*433 Phillip C. Houston of Kocha & Houston, P.A., West Palm Beach, and Paula Gold of Baskin & Sears, P.A., Boca Raton, for appellants.
B.F. Paty, Jr., of Paty, Downey, Lewis & Fick, Palm Beach, for appellees.
HURLEY, Judge.
Plotch and Berkley, investors in a deal gone sour, appeal the entry of adverse directed verdicts. We find error and reverse.
Atlantic Southern Group, Inc. ("ASG"), engages in the business of syndicating real estate into limited partnerships. It locates desirable pieces of property and then attempts to "lock them up" with an option to purchase or other form of agreement. Next, it prepares and circulates a prospectus aimed at attracting investors. As an example, ASG felt that the Sea Mist Marina in Boynton Beach had investment potential. Therefore, ASG negotiated with the owners, Wendall and Janet Hall, and signed a *434 "letter of intent," which called for the Halls to contribute their land (approximately ten to twelve acres, valued at $1,450,000 and encumbered by $550,000 in mortgages) and, in return, receive a 42 1/2% interest in a limited partnership. Then, ASG distributed a prospectus which described the marina proposal. Eli Plotch invested $30,000.00 in this venture; Philip Berkley, acting through a closely-held corporation, did the same.
The marina was experiencing cash-flow problems and therefore, according to Mr. Hall, ASG agreed to advance monies "to be used to keep the ball rolling, so to speak, until [the limited partnership] was formed." The contract between ASG and the Halls contained the following provision:
As part of signing of this letter of agreement the Atlantic Southern Group, Inc. as Trustee for the investors has contributed $31,500. good faith money. An additional $8,500. will be due and payable within thirty (30) days of the signing of this letter of agreement.
The above stated $40,000. in advance contributions are part of the total cash investment contribution.
Janet and Wendall Hall agree to secure the $40,000. advance contribution or any part thereof by assigning as collateral the existing inventory in the marina store in an amount not to exceed the actual cash advances.
Pursuant to this provision, the Halls received somewhere between $60,000 and $75,000. Nevertheless, they failed to execute a security agreement. An officer of ASG testified that several requests for compliance were made but without success. Mrs. Hall offered this explanation: "We signed a letter of intent stating we would. We were never at any time presented with a piece of paper asking us to do so." In any event, with the full knowledge and consent of ASG, the Halls used the monies to pay off an outstanding tax lien, to make mortgage payments, to purchase an inventory of outboard motors and other supplies for the marina store, and to construct boat racks at the marina.
For reasons that are not altogether clear, the limited partnership never came into being. ASG responded to Plotch and Berkley's concern about the loss of their investment by providing the following letter:
This letter acknowledges your investment of $30,000.00 in a Limited Partnership to be formed by the name of Sea Mist Associates, Ltd. which at this point has not occurred. Per conversation on May 22nd between Phil Berkley and Gus Gregory, Atlantic Southern Group, Inc. will return the $30,000.00 investment plus interest at the rate of 10%, no later than thirty (30) days from the date of that meeting, i.e. May 22nd, 1979.
 Very truly yours,
 ATLANTIC SOUTHERN
 GROUP, INC.
 s/ Augustus P. Gregory, Jr.
 s/ Kenneth R. Sharp
 s/ Nicholas A. Solimine, Jr.
When the refund failed to materialize, Plotch and Berkley instituted suit against ASG, its officers, and the Halls. This appeal is limited to the counts involving the personal liability of the corporate officers and the Halls. Plotch and Berkley claim the corporate officers are personally liable for ASG's debt because they signed the above-quoted letter without designating their corporate status. As for the Halls, appellants contend that they are guilty of conversion and, additionally, appellants assert an entitlement to an equitable lien against the marina store's inventory and the marina property. As indicated, the trial court directed verdicts in favor of the defendants.

I.
Plotch and Berkley contend that the trial court erred by absolving ASG's corporate officers of individual liability. They contend that these defendants became personally obligated to repay ASG's debt when they signed the above-quoted letter without using a preposition such as "by" or "for", to indicate that they were signing in a representative capacity. In support of this *435 argument, appellants cite section 673.403, Florida Statutes (1984), which provides:
(1) A signature may be made by an agent or other representative, and his authority to make it may be established as in other cases of representation. No particular form of appointment is necessary to establish such authority.
(2) An authorized representative who signs his own name to an instrument:
(a) Is personally obligated if the instrument neither names the person represented nor shows that the representative signed in a representative capacity;
(b) Except as otherwise established between the immediate parties, is personally obligated if the instrument names the person represented but does not show that the representative signed in a representative capacity, or if the instrument does not name the person represented but does show that the representative signed in a representative capacity.
(3) Except as otherwise established the name of an organization preceded or followed by the name and office of an authorized individual is a signature made in a representative capacity.
Appellants' argument is without merit because ASG's letter is not an "instrument" within the meaning of the Uniform Commercial Code. Section 673.104, Florida Statutes (1984), defines the term "negotiable instrument" as follows:
(1) Any writing to be a negotiable instrument within this chapter must:
(a) Be signed by the maker or drawer; and
(b) Contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation or power given by the maker or drawer except as authorized by this chapter; and
(c) Be payable on demand or at a definite time; and
(d) Be payable to order or to bearer.
Obviously, ASG's letter is not payable to order or bearer, nor does it indicate that the sum promised is payable on demand or at a definite time. Thus, the letter is not a "negotiable instrument," and the corporate officers are not personally obligated thereunder pursuant to section 673.403, Florida Statutes (1984). Cf. Roy v. Davidson Equipment, Inc., 423 So.2d 496 (Fla. 4th DCA 1982). Moreover, the letter is devoid of any language which would lead a reasonable person to conclude that the corporate officers were providing a personal guarantee for a preexisting corporate debt. Thus, the trial court correctly granted a directed verdict on this count.

II.
Appellants also sought damages against the Halls under section 812.035(7), Florida Statutes (1984), on the theory that the Halls had converted their money by refusing to collateralize the inventory of the marina store after receipt of over $60,000 from ASG. Appellants argue that the trial court erred by directing a verdict in favor of the Halls on this count and, in support of this contention, cite various portions of the record which show that the Halls used the money to improve the marina. The Halls respond that this was the plan from the outset and that the money was spent with the full knowledge and consent of ASG. Thus, they assert there is no evidence of conversion or theft; at best, the evidence indicates a breach of a promise to enter into a security agreement.
A directed verdict for the defendant at the close of evidence is proper only when the evidence, viewed in a light most favorable to the plaintiff, shows that a jury could not reasonably differ as to the existence of any material fact and that the defendant is entitled to judgment as a matter of law. Forshee v. Peninsular Life Ins. Co., 370 So.2d 842 (Fla. 3d DCA 1979); see also Stenback v. Racing Associates, Inc., 394 So.2d 1128 (Fla. 4th DCA 1981); Stokes v. Clark, 390 So.2d 489 (Fla. 1st DCA 1980). On appellate review, a directed verdict should be affirmed if, in viewing the evidence in a light most favorable to *436 the non-moving party, it appears that the trier of fact could not have reasonably differed as to the establishment of material facts. McDonald v. McGowan, 402 So.2d 1197 (Fla. 5th DCA 1981); Cohn v. Surfside Plaza Hotel, 377 So.2d 44 (Fla. 3d DCA 1979); Dent v. Casale, 358 So.2d 1101 (Fla. 3d DCA), cert. denied, 365 So.2d 710 (Fla. 1978). It is reversible error to direct a verdict where there is some substantial evidence tending to prove the plaintiff's case. Memorial Park, Inc. v. Spinelli, 342 So.2d 829 (Fla. 2d DCA 1977), cert. denied, 354 So.2d 986 (Fla. 1978).
There is no evidence in the case at bar to indicate that the Halls were under any obligation to keep the money invested by appellants intact and, therefore, we conclude that the directed verdict on this count should be affirmed. See Belford Trucking Co. v. Zagar, 243 So.2d 646 (Fla. 4th DCA 1970); cf. Allen v. Gordon, 429 So.2d 369 (Fla. 1st DCA 1983). "A mere obligation to pay money may not be enforced by conversion action (citations omitted); and an action in tort is inappropriate where the basis of the suit is contract, either express or implied." Belford at 648.
Although the Halls failed to execute a security agreement in exchange for the cash as contemplated by the letter of intent, the evidence does not show, and appellants do not allege, that the Halls had any obligation to deposit the funds into a special account or otherwise specifically identify the money sought to be recovered. (There is some indication that Plotch and Berkley deposited $30,000 each with other defendants to be held in escrow by ASG, but there is no evidence to show that the Halls had any obligation to hold these funds in escrow. The money was transferred to the Halls by checks drawn on accounts of ASG, and Janet Hall's unrebutted testimony was that an officer of ASG told her that ASG was not forwarding money from investors.)
Thus, there was a complete lack of evidence to support the conversion count and, accordingly, the trial court was correct in its decision to direct a verdict on this count.

III.
Finally, Plotch and Berkley, claiming to be third-party beneficiaries of the contract between ASG and the Halls, sought to impress an equitable lien on the inventory of the marina store and upon the marina property. The trial court directed a verdict on this count despite the provision in the contract which called for the creation of a lien on the marina store inventory. In our view, this constituted error.
"The equitable lien is a remedial device of considerable flexibility adaptable to a wide variety of circumstances." Boyer and Katun, The Equitable Lien in Florida, 20 U.Miami L.Rev. 731 (1966). "Such liens may arise from written contracts which show an intention to charge some particular property with a debt or obligation, or they may be declared by a court of equity out of general considerations of right and justice as applied to the relations of the parties and the circumstances of their dealings."[1]Ross v. Gerung, 69 So.2d 650, 652 (Fla. 1954); see generally Jones v. Carpenter, 90 Fla. 407, 106 So. 127 (1925); Tucker v. Prevatt Builders, Inc., 116 So.2d 437 (Fla. 1st DCA 1959). A circumstance justifying the imposition of an equitable lien exists "when the claimant has furnished funds for the improvement of land with the knowledge and consent of the owner." Wagner v. Roberts, 320 So.2d 408, 410 (Fla. 2d DCA 1975), cert. denied, 330 So.2d 20 (Fla. 1976); see also Union Trust Co. of St. Petersburg v. Wittmann, 145 So.2d 540 (Fla. 2d DCA 1962); Carter v. Suggs, 190 So.2d 784 (Fla. 1st DCA 1966).
The sole purpose for the security provision in the contract between ASG and *437 the Halls was to minimize risk to the investors. Plotch and Berkley, the only investors in the marina project, qualified as third party beneficiaries under this provision and were entitled to seek enforcement of the expressed intent of the parties by subjecting the inventory of the marina store to an equitable lien. See generally, Hialeah Hospital, Inc. v. Raventos, 425 So.2d 1205 (Fla. 3d DCA 1983); 4 Corbin on Contracts, § 779K (1951 ed. with 1984 Supp.); see also, Peters Grazing Association v. Legerski, 544 P.2d 449 (Wyo. 1975). Moreover, since they were able to trace the disbursement of their combined sixty thousand dollar investment from ASG's special account to the Halls and prove that the Halls expended the money to improve the marina, Plotch and Berkley provided ample justification for impressing an equitable lien against the marina property.
Accordingly, we reverse the trial court's decision to grant a directed verdict on this count and remand the cause for a new trial.
AFFIRMED IN PART AND REVERSED IN PART.
GLICKSTEIN and DELL, JJ., concur.
NOTES
[1] The basis of equitable liens may be estoppel or unjust enrichment. Blumin v. Ellis, 186 So.2d 286 (Fla. 2d DCA 1966). However, in order to prevail on an estoppel theory, there must be evidence of fraud, misrepresentation, or other affirmative deception. Rinker Materials Corp. v. Palmer First National Bank & Trust Co. of Sarasota, 361 So.2d 156 (Fla. 1978); Diversified Commercial Developers, Inc. v. Formrite, Inc., 450 So.2d 533 (Fla. 4th DCA 1984).