624 So.2d 294 (1993)
Robert GORDON, et al., Appellants,
v.
FLAMINGO HOLDING PARTNERSHIP, et al., Appellees.
Nos. 92-2366, 92-1551, 92-2446 and 92-2340.
District Court of Appeal of Florida, Third District.
August 17, 1993.
As Amended on Denial of Rehearing October 26, 1993.
*295 Lapidus & Frankel, Jorden Burt Berenson Klingensmith & Suarez and Dan Paul and Irma T. Solares, Schulte Blum McMahon & Joblove and Michael D. Joblove, Maria Metropolis, Miami, for appellants.
Coll Davidson Carter Smith Salter & Barkett and Darrell W. Payne and Vance E. Salter, Dubbin Berkman Bloom & Karan, Miami, for appellees.
Before JORGENSON, LEVY, and GERSTEN, JJ.
JORGENSON, Judge.
This is an appeal from a final judgment of foreclosure arising from the sale and development of a parcel of real property in North Bay Village. We affirm the order on appeal except for that portion of the final judgment that denies Robert Gordon prejudgment interest.
In 1981, Robert Gordon sold his Caribbean Towers property to an entity called Firewater, N.V., and took back a purchase money first mortgage for $4,260,000. At the time of the sale, Caribbean Towers was an apartment complex with 103 units, and had the right to develop an additional eighty units. Its rents were pledged as additional collateral for the mortgage debt. Florida East Coast Properties [FECP], whose principal was Tibor Hollo, owned the adjacent parcel of land known as the Flamingo property. Firewater conveyed Caribbean Towers to FECP. In February, 1982, FECP and Firewater executed a Unity of Title agreement to combine the Caribbean Towers property and the Flamingo property, and to develop the site jointly as a high-rise condominium to be marketed through Flamingo Marina Corporation. None of the parties notified Gordon of the Unity of Title agreement.
The City of North Bay Village granted Flamingo Marina Corporation a permit to build a 506 unit project on the Flamingo property. The permit was conditioned upon an agreement between FECP and the City that FECP would close 14 units to residential use in Caribbean Towers and transfer from Caribbean to Flamingo the right under the City's zoning code to build 80 additional units on the Caribbean property. Throughout this time, the Caribbean property remained the security for Gordon's mortgage.
In 1984, Flamingo financed the construction of the 506 unit building by the issuance and sale of Dade County Housing Authority Bonds guaranteed by Irving Trust Company. To secure the bonds, Irving Trust took a first mortgage on the Flamingo property and a second mortgage, behind Gordon's, on the Caribbean property. Irving Trust was aware that Gordon had not consented to the Unity of Title or the transfer of the rights to develop the Caribbean property, and knew that the transfer of those rights would diminish the value of Gordon's collateral. Fourteen Caribbean units were closed, and Flamingo Plaza became available for occupancy in March, 1988. By then the unified property had the maximum density allowed under the City's zoning code.
In March, 1990, FECP conveyed only the Flamingo Property, and not the Caribbean property, to Flamingo Holding Partnership [FHP]. FHP took title to the property knowing that development rights had been transferred from the Caribbean parcel to the Flamingo parcel, and that both the Unity of Title agreement and the transfer of rights had been accomplished without the knowledge or consent of Robert Gordon.[1]
In August of 1989, Gordon's attorney sent FECP a demand letter for payment of the overdue 1988 taxes on the Caribbean property, and a reminder that a principal installment of $300,000 would be due on September 17, 1989. FECP, through Tibor Hollo, responded to the attorney and asked Gordon to *296 "hold tight" for 50 days while he negotiated with the Bank of New York, successor to Irving Trust, to take over the entire project. Gordon, through his attorney, agreed to "hold tight" for 50 days, and then to decide how to proceed if negotiations with the Bank of New York were unsuccessful. The negotiations failed.
In January, 1990, the Gordon mortgage on the Caribbean property went into default for failure to pay the 1988 ad valorem taxes and the principal payment due September 17. Gordon filed this action for foreclosure and sought to impose an equitable lien as compensation for the degradation of the collateral caused by the closing of 14 units and the transfer of developmental rights to the Flamingo property. As an alternative, he sought compensation as a third party beneficiary of the Housing Finance Authority's mortgage to require FHP, mortgagor by assignment, to abide by the agreement and pay the Gordon mortgage. On Gordon's motion for summary judgment, the trial court ruled that Gordon was not an intended third party beneficiary.
Following trial on the other claims, the trial court entered a detailed 17-page order and ruled that Gordon was entitled to a judgment of foreclosure on the Caribbean property, as there was no express forbearance agreement after the fifty day period of "holding tight" had expired; that FECP was estopped from asserting any equitable defense to the foreclosure because FECP and Tibor Hollo were primarily at fault for impairing the collateral; that Gordon was entitled to an equitable lien upon the Flamingo property to compensate him for the impairment of the Caribbean collateral; that the lien would be superior to the Irving Trust lien; and that Gordon was not entitled to prejudgment interest. FECP appeals the final judgment of foreclosure; Flamingo appeals the order granting Gordon an equitable lien on its property. Gordon appeals the order that earlier denied him status as a third party beneficiary of the Housing Authority Mortgage, and the portion of the Final Judgment of Foreclosure that denied him prejudgment interest on the equitable lien.

THE FORECLOSURE
The trial court properly ruled that Gordon was entitled to a final judgment of foreclosure on the Caribbean property, as there was substantial competent evidence to support its finding that Gordon had not agreed to extend the time indefinitely for payment of the mortgage. See Triefler v. Barnett Bank of South Florida, 588 So.2d 240 (Fla. 3d DCA 1991) (appellate court will not disturb trial court's findings that are supported by substantial competent evidence). The evidence established that at best, Tibor Hollo and Gordon's attorney agreed to a fifty-day forbearance period, during which Gordon would simply "hold tight."
Although Gordon accepted two payments after the 50-day period had expired, he was not estopped from foreclosing on the property. The record supports the trial court's finding that Gordon accepted those payments while being misled, perhaps unintentionally, by Tibor Hollo regarding the status of negotiations with the Bank of New York. Under those circumstances, the trial court correctly determined that Gordon had not waived his right to foreclosure. "A waiver of a default requires action by the mortgagee which misleads the mortgagor so that the mortgagor acts in a way that he would not have acted if he had known that the mortgagee would require performance under the strict terms of the mortgage agreement." Flagler Center Bldg. Loan Corp. v. Chemical Realty Corp., 363 So.2d 344, 347 (Fla. 3d DCA 1978) (citations omitted), cert. denied, 372 So.2d 467 (Fla. 1979). In this case, it was the mortgagor's misrepresentations that misled Gordon into thinking that negotiations with the Bank of New York were still in progress, when in fact they had failed. The correspondence between Tibor Hollo and Gordon's attorney explicitly provided that Gordon would "hold tight" only while those negotiations were ongoing. The mortgagor's misrepresentations cannot form the basis for a finding that the mortgagee was equitably estopped from enforcing the terms of the mortgage.

THE EQUITABLE LIEN
This case presents a question of first impression  whether a transfer of development *297 rights belonging to a parcel of property held as collateral for a note and mortgage, accomplished without the knowledge or consent of the mortgagee, can support the creation of an equitable lien where that transfer has significantly impaired the collateral's value, and where no remedy at law can compensate the mortgagee for the loss of value.[2]
The trial court properly imposed an equitable lien on the Flamingo property. To obtain an equitable lien, a party must prove fraud, misrepresentation, or affirmative deception. Rinker Materials Corp. v. Palmer First Nat'l Bank & Trust Co. of Sarasota, 361 So.2d 156 (Fla. 1978). The basis of an equitable lien may be unjust enrichment. Plotch v. Gregory, 463 So.2d 432, 436 n. 1 (Fla. 4th DCA 1985). "Such liens ... may be declared by a court of equity out of general considerations of right and justice as applied to the relations of the parties and the circumstances of their dealings." Id. at 436.
When FECP and Tibor Hollo transferred the Caribbean property development rights to the Flamingo property, they significantly impaired the value of the Caribbean property, which was Robert Gordon's collateral, and increased the value of the Flamingo property. The transfer was accomplished without Gordon's knowledge or consent. Based on the evidence presented, the trial court properly found in its Final Judgment of Foreclosure that "[a]s a result of the transfer of development rights the collateral for the Mortgage has been wasted, impaired, and diminished," that the value of the collateral was insufficient to satisfy the Gordon mortgage, and that a substantial deficiency would result from the foreclosure.[3] Furthermore, there was substantial competent evidence to support the trial court's finding that although the development rights are theoretically reclaimable once Gordon's mortgage is foreclosed and the Unity of Title is extinguished, Flamingo would have to close 94 units that are currently occupied and evict the tenants. As the trial court found, "[n]ot only is that solution impractical and wasteful, but it is far from clear that the City would permit further development on Caribbean in that event." Faced with a unique set of facts involving two contiguous pieces of property that had become irrevocably intertwined through the Unity of Title, the transfer of development rights, and the resulting development, the trial court properly fashioned a unique solution.[4] Accordingly, we affirm the trial court's imposition of an equitable lien on the Flamingo property.[5]

PREJUDGMENT INTEREST
The trial court erred in denying Gordon prejudgment interest on the amount by which his collateral had been impaired. See Argonaut Ins. Co. v. May Plumbing Co., 474 So.2d 212 (Fla. 1985) (prejudgment interest from date of loss recoverable as element of pecuniary damage); Zacco Contractors, Inc. v. Irving Trust Co., 488 So.2d 616 (Fla. 3d DCA 1986) (prejudgment interest awarded on contractor's equitable lien). The date on which the interest begins to accrue is the date of loss, specifically, the date on which the transfer of development rights was accomplished.
Affirmed in part; reversed in part; remanded for further consistent proceedings.
NOTES
[1] Furthermore, FHP knew that Gordon was claiming an equitable lien on the property, as he had filed this lawsuit before the transfer was effected.
[2] "Basically, a TDR [transfer of development rights] allows that development rights, attributable to one piece of land, be transferred to another." City of Hollywood v. Hollywood, Inc., 432 So.2d 1332 (Fla. 4th DCA), rev. denied, 441 So.2d 632 (Fla. 1983).
[3] The trial court imposed the lien only to the extent necessary to satisfy the deficiency judgment.
[4] This opinion should not be read to stand for the proposition that equitable liens may be imposed whenever a mortgagor has wasted or impaired the value of the collateral, or whenever a deficiency judgment results.
[5] We find no error in the trial court's conclusion that the lien attaches to the property notwithstanding its transfer to the Flamingo Holding Partnership, and that the equitable lien is superior to the lien of Irving Trust Company.