676 So.2d 4 (1996)
Samuel Gordon KILGORE and Ruth Anne Kilgore, Husband and Wife, Appellants,
v.
KILLEARN HOMES ASSOCIATION, INC., Appellee.
No. 95-3016.
District Court of Appeal of Florida, First District.
April 19, 1996.
Order Clarifying Opinion June 25, 1996.
*5 Martin S. Friedman of Rose, Sundstrom & Bentley, Tallahassee, for Appellants.
Bruce P. Anderson of Bruce P. Anderson, P.A., Tallahassee, for Appellee.
PER CURIAM.
This is an appeal from a partial summary judgment determining that the entire parcel of property owned by appellants is subject to the covenants and restrictions of the Killearn Estates. We reverse.
In 1994, the Kilgores purchased from the Hintikkas property consisting of approximately seven acres, which is surrounded on three sides by property that is within Killearn Estates. The property consists of a lot within Killearn Estates, which provides access to a public road, and additional adjacent acreage that originally was not within Killearn Estates. The question presented is whether at some point the entire parcel, including the additional adjacent acreage, became subject to the covenants and restrictions of Killearn Estates.
Killearn Homes Association, Inc. ("Homes") filed a complaint alleging the Kilgores' entire parcel was subject to the covenants and restrictions of Killearn Estates. Homes alleged the Kilgores had purchased the property subject to all covenants and restrictions, reservations, and easements of record. Homes further alleged that the developer of Killearn Properties, J.T. Williams, the original owner of the parcel, initially made lot 14 subject to the covenants and restrictions of Killearn Estates, but did not subject the several adjacent acres of property to those restrictions. Lot 14 was part of Block W, Unit 7 of Killearn Estates. Homes further alleged that the Kilgores' predecessors in title, the Hintikkas, applied to the City of Tallahassee to create a minor subdivision, Gardenview Too, from a portion of the unplatted additional acreage formerly owned by Williams, and in the process were required by the city to execute a unity of title document pertaining to the portion they retained. Homes claimed that by virtue of the subdivision process and the execution of the unity of title document, the additional acreage the Hintikkas retained merged with and became part of Lot 14, Block W, Unit 7 of Killearn Estates and subject to its covenants and restrictions, and that the Kilgores had purchased the property subject to those covenants and restrictions. Homes further alleged that the Kilgores were in violation of several of the covenants and restrictions relating to use of the property to keep livestock or animals for commercial purposes, in that *6 they were keeping in excess of thirty miniature horses on the property for personal or commercial purposes, and as a result were carrying on noxious or offensive activities which were an annoyance or nuisance to the neighborhood. Homes complained of noise, smell, water runoff and insect and vermin infestation.
In count I of the complaint, Homes sought to permanently enjoin the Kilgores from violating the covenants and restrictions by keeping the miniature horses on the property. Both parties submitted motions for partial summary judgment as to the applicability of the restrictive covenants.[1] The trial court granted Homes' motion, basing its decision on section 177.011, et seq., Florida Statutes, and the subdivision documents, which it found:
demonstrate[d] that the previously unplatted parcel of land which was merged with Lot 14, Block W, Unit 7, Killearn Estates, was so identified as property in Killearn Estates and was not identified as a lot in Gardenview Too. Furthermore, the deed from the Defendant's predecessor in title to Defendants, as well as the Defendants' mortgage, reflect that this property was subdivided into Killearn Estates. After the subdivision process the previously unplatted property had to be identified either as Gardenview Subdivision or Killearn Estates Subdivision. That portion of the property to the south was clearly defined as Lots 1 through 4 of Gardenview Too Subdivision with the acreage to the north being identified as combined with Lot 14, Block W, Unit 7, Killearn Estates.
The trial court permanently enjoined the Kilgores from breeding or keeping horses or ponies on the property for any purpose, and subsequently denied a stay.[2]
On appeal, Homes again asserts that the subdivision process, by which the Hintikkas created Gardenview Too from a portion of the unplatted additional acreage, originally approximately 7.79 acres, had the effect of making the residual additional acreage a part of Killearn Estates. They contend that since only four of the five lots created during the subdivision process were numbered, as required by section 177.031(11), Florida Statutes, those in the southernmost 1.66 acres of the additional acreage, that the remaining unnumbered area, which is adjacent to lot 14, must have become combined with lot 14. Homes also relies on the definition of "subdivision," found in section 177.031(18), and on section 177.09(18), requiring progressive numbering of lots. Further, Homes contends that the description subsequently attached to the deed confirms an intent to make the additional acreage part of Lot 14, Block W, Unit 7 of Killearn Estates.
Appellants contend that there is no reason the residual portion of the additional acreage could not have remained unplatted. Further, Homes was not a party to the unity of title document, and that document did not have the effect of merging the additional property with lot 14 for the purposes of applying covenants and restrictions. Appellants submitted the affidavit of a city planner who participated in the approval of the Gardenview Too subdivision, to the effect that the concern addressed by the unity of title document was that the remaining acreage should not be further subdivided without approval by the city.
We conclude that although the covenants and restrictions continue to apply to lot 14 in its original configuration, they do not apply to the adjacent additional acreage that the Hintikkas retained after the creation of Gardenview Too. The unity of title document did not have the effect of merging lot 14 and the additional acreage for a purpose other than that intended by the parties to the agreement.
In general, it appears that the purpose of a unity of title document is to in some way restrict or transfer development rights; it is an agreement entered into by the property owner and a governmental authority. See generally, Gordon v. Flamingo Holding Partnership, 624 So.2d 294 (Fla. 3d DCA 1993) review denied 637 So.2d 234 (Fla.1994); Maturo v. City of Coral Gables, 619 So.2d *7 455 (Fla. 3d DCA 1993). Here, the record reflects that the purpose of the unity of title document which the city required the Hintikkas to execute was to prevent further subdivision of the additional property without city approval. The document was executed at the instance of the city during the subdivision process. The Hintikkas and the city were parties to the agreement, but Homes was not.[3]
It is a basic principle that covenants restraining the free use of realty are not favored in the law, Sinclair Refining Co. v. Watson, 65 So.2d 732 (Fla.1953); Hagan v. Sabal Palms, Inc., 186 So.2d 302 (Fla. 2d DCA) cert. denied 192 So.2d 489 (Fla.1966); Ortega Co. v. Justiss, 175 So.2d 554 (Fla. 1st DCA 1965). Restrictive covenants "are private promises or agreements creating negative easements or equitable servitudes which are enforceable as rights arising out of contract." Dade County v. Matheson, 605 So.2d 469 (Fla. 3d DCA 1992) (Ferguson, J., dissenting to denial of rehearing en banc), citing Board of Public Instruction v. Town of Bay Harbor Islands, 81 So.2d 637 (Fla.1955). It is clear as a matter of law that there is no agreement between appellants or their predecessors in title and Homes to make the additional acreage subject to the covenants and restrictions of Killearn Estates. The summary judgment is reversed with directions to lift the permanent injunction.[4]
JOANOS, WOLF, and VAN NORTWICK, JJ., concur.

ON MOTION FOR CLARIFICATION AND REHEARING
PER CURIAM.
Appellee seeks clarification of our opinion, asserting it is in doubt as to whether on remand it may seek an evidentiary hearing on its motion for summary judgment. Although we believe it is clear from our opinion that no further evidentiary proceedings are required or authorized on appellee's motion for summary judgment, see Collins v. State, 21 Fla. Law Weekly D652, ___ So.2d ___ (Fla. 1st DCA, March 11, 1996), we hereby clarify our opinion to that extent. In all other respects, the motion for clarification and for rehearing is denied.
JOANOS, WOLF and VAN NORTWICK, JJ., concur.
NOTES
[1] Both parties assert that the case can be resolved on the pleadings and affidavits.
[2] Because of the ruling on count I, the trial court did not reach count II for nuisance.
[3] Appellee asserts that through the subdivision process, the Hintikkas' intended the residual acreage to become part of Killearn Estates. Although not critical to our decision, we note that at the time they subdivided, the adjacent additional acreage had on it a barn and fencing which would have been inconsistent with the covenants and restrictions of Killearn Estates. The argument that they intended the residual property to become part of Killearn Estates directly conflicts with the conditions that existed on the property at the time. In addition, the record reflects that the Hintikkas specifically marketed the property as suitable for keeping horses.
[4] Due to our disposition of this issue, we find it unnecessary to discuss the other issues raised in this appeal.